# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH DAKOTA
# WESTERN DIVISION

| | |
|---|---|
| Frankenmuth Mutual Insurance Company, a Michigan Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>Firefly Builders, Inc., and Wayne Koistinen, Roseanne Koistinen, and Larry Koistinen,<br><br>        Defendants. | Case No.:   5:22-cv-5079 |

## FRANKENMUTH MUTUAL INSURANCE COMPANY'S
## INDEMNITY COMPLAINT

Now comes Plaintiff, Frankenmuth Mutual Insurance Company ("Frankenmuth"), by and through its undersigned counsel, for its Indemnity Complaint ("Complaint") against Defendants, Firefly Builders, Inc. and Wayne Koistinen, Roseanne Koistinen, and Larry Koistinen (hereinafter referred to as "Defendants" or "Indemnitors"), alleges as follows:

### PARTIES

1.   Frankenmuth is an insurance company incorporated in the State of Michigan with its principal place of business in Michigan.

2.   Upon information and belief, Defendant, Firefly Builders, Inc. ("Firefly") is an South Dakota corporation with its principal place of business at 1 North 5th Avenue, in Belle Fourche, South Dakota and can be served care of its registered agent, Wayne Koistinen, located at 10915 Summercreek Lane, Belle Fourche, South Dakota. Individual Indemnitors, Wayne Koistinen, Roseanne Koistinen, and Larry Koistinen are residents of South Dakota with the same listed address of 10915 Summercreek Lane, Belle Fourche, South Dakota.

1

## JURISDICTION AND VENUE

3. This court has jurisdiction over this cause under 28 U.S.C. § 1332(a)(1) in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, and is between citizens of different states.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the majority of the Defendants reside in this district.

## FACTS COMMON TO ALL COUNTS

5. Frankenmuth is in the business of, among other things, providing surety bonds to contractors in connection with construction projects throughout the United States.

6. Firefly is in the business of, among other things, performing construction services for construction projects in the United States.

### I. THE INDEMNITY AGREEMENT EXECUTED BY THE INDEMNITORS

7. In reliance upon the Indemnitors' financial representations in exchange for the Indemnitors executing an indemnity agreement, Frankenmuth extended **$855,450.00** of surety credit to Firefly.

8. On or about October 11, 2021, Firefly, through its representatives, Wayne Koistinen, Larry Koistinen, and Roseanne Koistinen executed a General Agreement of Indemnity (the "Indemnity Agreement') in favor of, among others, Frankenmuth. A true and correct redacted copy of the Indemnity Agreement is attached hereto as **Exhibit 1** and is incorporated herein by reference as if set forth fully herein.

9. As set forth in the Indemnity Agreement, an "Indemnitor" is defined as, among other things, "Undersigned, and all new indemnitors added to this Agreement by rider, their

present and future direct and indirect subsidiaries; affiliates, and parent companies, and all of their successors and assigns, and any joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which one or more of them hold any ownership interest whether in existence now or formed or acquired hereafter, and any entity that obtains bonds from Company at the request of any of the aforementioned parties, or any combination of the above. " *See* **Exhibit 1** at pp. 1.

10. On or about October 11, 2021, Firefly, through the signature of its President, Wayne Koistinen, and Larry Koistinen, Roseanne Koistinen, and Wayne Koistinen each individually and through their own signatures, executed the Indemnity Agreement. *See* **Exhibit 1** at Signatures, pp. 8.

11. Therefore, pursuant to the terms of the Indemnity Agreement, the Indemnitors as set forth in the Indemnity Agreement include Firefly *See generally*, **Exhibit 1**.

12. The Indemnity Agreement defines "Company" as "Frankenmuth Mutual Insurance Company, Patriot Insurance Company, any of their present or future direct or indirect parent companies, any of the respective parent or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and any/or any of the aforementioned entities' successors or assigns. For purposes of this definition the term affiliate includes any entity that controls, is controlled by, or is under common control with Frankenmuth Mutual Insurance Company, Patriot Insurance Company, or any of their parent or subsidiary companies, whether control is due to ownership of voting interest, economic interests or other management or governance contract or arrangement that results in any such entities exercising control over the affairs of such entity." *See* **Exhibit 1** at pp. 1.

13. The term "Bond" is defined in the Indemnity Agreement as meaning:

> Any and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which Company has executed or procured, or for which Company has an obligation as a result of an asset purchase, acquisition, merger or like transaction issued for or on behalf of: (a) any one or more of the Indemnitors (without regard to whether any such Indemnitor signed this Agreement), their respective present or future direct or indirect parent companies, subsidiaries and affiliates and all of their respective successors and assigns; (b) any present or future joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which one or more of the persons or entities identified in sub-paragraph (a) above have an interest; (c) any other person or entity at the request of any of the Indemnitors;  or  (d) any combination of the above, whether executed or procured before, on, or after the execution of this Agreement. For the purpose of this definition the term "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, substitutions, increases or decreases in penal sum, continuations and extensions.

*See* **Exhibit 1** at pp. 1.

14. Further, the Indemnity Agreement defines the term "Loss" as used therein as meaning:

> All loss, costs and expense of any kind or nature, including attorneys' and other fees or costs, which Company incurs in connection with any Bond, Contract or this Agreement, including but not limited to all loss, cost and expense incurred by reason of: (a) the underwriting or issuance of any Bond, (b) making any investigation in connection with any Bond; (c) any claim, which means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond or this Agreement, (d) any Indemnitor failing to timely and completely perform under or comply with this Agreement, (e) Company enforcing this Agreement (f) Company prosecuting or defending any action in connection with any Bond; (g) obtaining the release of any Bond; (h) Company recovering or attempting to recover Property in connection with any Bond or this Agreement (i) Company enforcing by litigation or otherwise any of the provisions of this Agreement, (j) any act of Company to protect or procure any of Company's rights, protect or preserve any of the Company's interests, or to avoid or lessen Company's liability or alleged liability, and (k) all interest accruing on any such amounts at the maximum legal rate . Indemnitors' liability to Company includes all Loss, all payments made, and all actions taken by Company under the Good Faith belief that Company is, would be or was liable for the Loss, the amounts paid, or the actions taken or that it was necessary or expedient to incur such Loss, make such payments or take such

4

actions, whether or not such liability, necessity or expediency existed. Good Faith means, with respect to any act, exercise of discretion or omission by Company, an absence of dishonesty, evil intent and actual malice toward Indemnitors. An itemized statement of Loss, sworn to by any officer of Company, or vouchers, affidavits, or other evidence of payment by Company, shall be prima facie evidence of Indemnitors' liability for such Loss.

*See* **Exhibit 1** at pp. 2.

15. The Indemnity Agreement provides that the Indemnitors, jointly and severally, agree to exonerate, indemnify, and save Frankenmuth harmless from any and all costs and expenses incurred by reason of having issued any bonds, as surety, on behalf of the Indemnitors and enforcing the terms of the Indemnity Agreement. In relevant part, the Indemnity Agreement states the following:

> <u>Indemnification and Hold Harmless:</u> Indemnitors shall exonerate, indemnify, and save Company harmless from and against all Loss. An itemized, sworn statement by an employee of company, or other evidence of payment, shall me prima facie evidence of the propriety, amount and existence of Indemnitor's liability. Amounts due to Company shall me payable upon demand.

*See* **Exhibit 1** at pp. 3 Indemnification and Hold Harmless.

16. As such, pursuant to the Indemnity Agreement, the Indemnitors agreed to exonerate and indemnify Frankenmuth, and hold Frankenmuth harmless from and against any and all liability, loss, and expense, including, among other things, any and all such expenses relating to any claims, liabilities, demands for payment, including legal and consultant fees and expenses as well as interest, which Frankenmuth may pay or incur by reason of having executed any bond at the request of the Indemnitors. *See* **Exhibit 1** at pp. 3 Indemnification and Hold Harmless.

17. The Indemnitors also agreed that Frankenmuth is to be "entitled to immediate reimbursement for any and all Loss incurred by it . . .." *See* **Exhibit 1** at pp. 4, Remedies.

5

18. The Indemnitors further agreed to the following language in the Indemnity Agreement:

> Collateral Security: Indemnitors agree to deposit with Company, upon demand, funds, other collateral security acceptable to Company, in an amount as determined by Company sufficient to discharge any Loss or anticipated Loss. Indemnitors further agree to deposit with Company, upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by any Indemnitor. Sums deposited with Company pursuant to this paragraph may be used by Company to pay such claim or be held by Company as collateral security against any Loss or unpaid premium on any Bond. Company shall have no duty to invest or provide interest on the collateral. Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph. Any remaining funds held by Company after payment of all sums due to Company under this Agreement shall be returned upon the complete release and/or discharge of Company's liability under all Bonds. In addition to the foregoing, Indemnitors shall promptly, on Company's written demand, procure the full and complete discharge of Company from all Bonds demanded by Company and all liability in connection with such Bonds. If Indemnitors are unable to obtain such discharge within the time demanded, Indemnitors shall promptly deposit with Company an amount of money that Company determines is sufficient to collateralize or pay any outstanding bonded obligations, or otherwise make provisions acceptable to Company for the funding of the bonded obligations.

*See* **Exhibit 1** at pp. 2, Collateral Security.

19. Accordingly, the Indemnitors were to deposit, immediately upon demand, a sum of money at Frankenmuth's discretion to protect Frankenmuth from actual or anticipated loss on account of having issued bonds on behalf of the Indemnitors. *See* **Exhibit 1** at pp. 2, Collateral Security.

20. As part of the collateral security provision of the Indemnity Agreement, the Indemnitors acknowledged and agreed "that their failure to immediately deposit with Surety any sums demanded under this section ***shall cause irreparable harm to Surety*** for which it ***has no adequate remedy at law***. Indemnitors agree and shall stipulate in any legal proceedings that Surety

is entitled to injunctive relief for specific performance of said collateral deposit obligation and ***do hereby expressly waive and relinquish any claims or defenses to the contrary***." **Exhibit 1** at pp.3, Collateral Security (emphasis added).

21. The Indemnity Agreement further provides the following paragraph setting forth Frankenmuth's right to information from the Indemnitors pertaining to the financial affairs or operations of the Indemnitors:

> Books, Records and Credit: Indemnitors shall furnish upon demand, and Company shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them. Indemnitors expressly authorize Company to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions. To the extent required by law, Indemnitors, upon request, shall be informed whether or not a consumer report has been requested by Company, and if so, of the name and address of the consumer reporting agency furnishing the report.

*See* **Exhibit 1** at pp. 4, Books, Records & Credit Reports.

## II. THE BONDS AND BOND CLAIMS

22. At the request of Firefly, Frankenmuth, in reliance upon the Indemnity Agreement and assets of the Indemnitors, provided surety credit in the form of payment and performance bonds on behalf of Firefly, as principal, and in favor of various public bodies, as obligees. The Bonds secured the obligations of Firefly to perform construction work required by contracts with the public bodies and to pay for labor and materials required for the completion of these contracts.

23. Specifically, Frankenmuth issued the following bonds on behalf of Firefly and in favor of the obligees identified below:

| Performance & Payment Bond Number | Bond Type(s) | Principal | Obligee(s) | Project Name | Bond Amount |
|---|---|---|---|---|---|
| SUR0003569 | Performance Bond | Firefly Builders, Inc. | U.S. Army Corps of Engineers | Thomaston Garage Bond | $223,850.00 |
| SUR0003569 | Payment Bond | Firefly Builders, Inc. | Army Corps of Engineers | Thomaston Garage Bond | $223,850.00 |
| SUR0003570 | Payment Bond | Firefly Builders, Inc. | United States Government Nebraska National Forest | East Ash Bond | $87,450.00 |
| SUR0003571 | Payment Bond | Firefly Builders, Inc. | Army Corps of Engineers | Mosquito Creek Bond | $58,570.00 |
| SUR0003572 | Payment Bond | Firefly Builders, Inc. | U.S. Fish and Wildlife Service | Wind River Bond | $124,990.00 |
| SUR0003573 | Payment Bond | Firefly Builders, Inc. | United States Government | Stone Lakes Bond | $48,520.00 |
| SUR0003578 | Payment Bond | Firefly Builders, Inc. | United States Government | National Elk NWR Kiosk Bond | $88,220.00 |

**TOTAL PENAL SUM OF ALL ISSUED BONDS:   $855,450.00**

The above Performance and Payment Bond Numbers shall be hereinafter referred to collectively, as the "Bonds." The Bonds' corresponding project names, shall be hereinafter referred to collectively, as the "Projects."

24. On or about May 26, 2022, Frankenmuth began receiving claims on the Bonds relating to the Projects asserting that Firefly failed to perform its obligations.

25. Regarding the Projects and their respective Bonds, Frankenmuth has received, as of the time of this filing, two payment bond claims from the Mosquito Creek Lake Project, one

8

payment bond claim on the East Ash Project, one payment bond claim on the Wind River project and one performance bond claim on the Thomaston Dam project.

26. Frankenmuth has a reasonable basis to believe it will receive additional payment bond claims on several if not all of the Bonds from Firefly's vendors on the Project.

27. As of September 6, 2022, Frankenmuth estimates a total potential net exposure under the Bonds of $905,450.00, the total penal sum of all bonds ($855,450.00) plus anticipated attorneys fees and expenses ($50,000.00).

### III. INDEMNITORS' BREACH OF INDEMNITY AGREEMENT

28. On or about May 26, 2022, and then again on July 21, 2022, Frankenmuth sent a written correspondence to the Indemnitors (a) regarding the pending claims and request for indemnity and (b) requesting collateral to be posted on or before July 28, 2022 (the "Demand Letters"). A true and correct copy of Frankenmuth's Demand Letters are attached hereto as **Group Exhibit 2**.

29. The Demand Letters were sent to each of the Indemnitors via first class mail to each of the Indemnitors' last known addresses. *Id*.

30. In the Demand Letters, Frankenmuth further requested an inspection of the Indemnitors' books and records that would be sufficient for Frankenmuth to ascertain the Indemnitors' current financial information including, but not limited to, access to Indemnitors' accounts payable, accounts receivable, profit and loss and income statements, tax returns, and bank statements. *See* **Group Exhibit 2**, at pp. 3.

31. As of September 8, 2022, the Indemnitors have failed and/or refused to provide any collateral security to cover part of the liability asserted against Frankenmuth relating to the Bonds as requested by Frankenmuth in the Demand Letters.

32. As of September 8, 2022, the Indemnitors have failed and/or refused to provide the financial books and records requested by Frankenmuth in the Demand Letters.

33. As a result of the Indemnitors' failure to post collateral as requested by Frankenmuth in the Demand Letters, Frankenmuth is being forced to incur uncollateralized losses and has no security to protect itself if the Indemnitors fail to indemnify Frankenmuth from its losses and/or from the Indemnitors potentially dissipating or transferring assets to avoid their obligations to indemnify, exonerate, and hold Frankenmuth harmless under the Indemnity Agreement.

34. As a result of the Indemnitors' failure to post collateral as requested by Frankenmuth in the Demand Letters, Frankenmuth is at risk of being an unsecured creditor of the Indemnitors in contravention of the Indemnity Agreement.

35. As a result of the Indemnitors' failure to comply with Frankenmuth's requests in the Demand Letters for complete access to financial books and records, Frankenmuth has no way of determining whether the Indemnitors have the necessary assets and/or funds to sufficiently hold Frankenmuth harmless on account of claims on the Bonds and/or losses arising therefrom.

36. As a result of the Indemnitors' failure to comply with Frankenmuth's request in the Demand Letters for complete access to financial books and records, Frankenmuth has no way of determining whether Firefly and the other Indemnitors have improperly dissipated assets in contravention of the Indemnity Agreement to avoid their obligations to indemnify, exonerate, and hold Frankenmuth harmless.

37. Frankenmuth has discharged its obligations under the Bonds, has acted in conformity with the Indemnity Agreement, and has satisfied all conditions precedent to recovery in this action.

## COUNT I
## Breach of Contract

38. Frankenmuth adopts, realleges, and incorporates by reference its allegations set forth in paragraphs 1 through 37 of its Complaint, as though fully set forth herein this paragraph.

39. The Defendants are obligated to (a) indemnify Frankenmuth to and from all losses in connection with the Bonds and the costs and expenses incurred by Frankenmuth in enforcing the terms of the Indemnity Agreement, (b) to post collateral to cover Frankenmuth's demand, and (c) allow Frankenmuth free access to inspect Indemnitors' books and records.

40. Pursuant to the Indemnity Agreement, the Defendants agreed to, among other things, pay Frankenmuth, immediately upon demand, all loss, interest, costs, and expenses incurred by Frankenmuth by reason of having executed any bonds on behalf of the Indemnitors, or incurred by Frankenmuth on account of any default under the Indemnity Agreement by any of the Indemnitors. *See* **Exhibit 1** at pp. 3, Indemnification and Hold Harmless.

41. Pursuant to the Indemnity Agreement, the Defendants agreed to, among other things, deposit with Frankenmuth, immediately upon demand, collateral security in an amount Frankenmuth deems necessary to protect Frankenmuth from actual or anticipated loss by reason of having executed any bonds on behalf of the Indemnitors. *See* **Exhibit 1** at pp. 3, Collateral Security.

42. Pursuant to the Indemnity Agreement, the Defendants agreed to, among other things, provide Frankenmuth free access to inspect the Indemnitors' books and records. *See* **Exhibit 1** at pp. 5, Books, Records & Credit Reports.

43. Despite Frankenmuth's Demand Letters, the Defendants have breached the Indemnity Agreement between the parties by failing and refusing to indemnify and hold Frankenmuth harmless from claims on the Bonds, failing to post collateral in the amount of

Frankenmuth's anticipated loss, and failing to allow Frankenmuth free access to the Indemnitors' books and records.

44. Frankenmuth has been damaged by the Defendants' material breach of the Indemnity Agreement in the initial amount of **$905,450.00** which represents Frankenmuth's estimated loss under the Bonds.

## PRAYER FOR RELIEF

WHEREFORE, Frankenmuth Mutual Insurance Company prays this Honorable Court:

(a) Enter Judgment against the Defendants, in the amount of Frankenmuth's actual costs and estimated loss to date, plus all costs and expenses, including attorneys' fees and interest, in the amount that Frankenmuth has incurred;

(b) Order the Defendants to indemnify and exonerate Frankenmuth for all liabilities, losses, and expenses incurred by Frankenmuth as a result of Frankenmuth having executed the Bonds;

(c) Order the Defendants to pay Frankenmuth's costs, including reasonable attorneys' and consulting fees incurred herein; and

(d) Grant such additional relief as this Court deems appropriate.

## COUNT II
### Exoneration and Quia Timet

45. Frankenmuth adopts, realleges, and incorporates by reference its allegations set forth in paragraphs 1 through 44 of its Complaint, as though fully set forth herein this paragraph

46. Frankenmuth has demanded the Defendants indemnify and hold it harmless from the claims asserted on the Bonds and post collateral. The collateral Frankenmuth is Frankenmuth's anticipated loss.

47. The Indemnitors owe Frankenmuth the duty of exoneration, requiring them to perform their obligations before Frankenmuth is called upon to perform its obligations under the Bonds. Additionally, the Indemnity Agreement requires the Indemnitors, to place funds or other

security with Frankenmuth immediately upon demand that are, among other things, sufficient to cover Frankenmuth's anticipated loss. *See* **Exhibit 1**; **Group Exhibit 2**.

48. Frankenmuth is entitled to a remedy known as *quia timet*. This remedy secures a surety from loss when it appears that the principal is reasonably likely to fail or refuse to perform or to protect the surety from loss.

49. The Defendants have failed and refused to meet their obligations under the Indemnity Agreement by failing to indemnify Frankenmuth from the pending claims on the Bonds and by failing to post or deposit with Frankenmuth collateral in any amount.

50. Frankenmuth is entitled to be reimbursed for the attorneys fees it has currently paid and to be fully collateralized by the Defendants for the collateral it has requested in order to discharge its obligations under the Bonds.

51. Frankenmuth lacks an adequate remedy at law to secure its right of exoneration from the Indemnitors and is without a plain, speedy remedy at law and will be irreparably and permanently injured unless this Court grants the equitable relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, Frankenmuth Mutual Insurance Company prays this Honorable Court:

(a) Order the Defendants to indemnify and exonerate Frankenmuth for all liabilities, losses, and expenses incurred by Frankenmuth as a result of Frankenmuth having executed the Bonds;

(b) Order the Defendants to pay Frankenmuth's costs, including reasonable attorneys' and consulting fees incurred herein; and

(c) Grant such additional relief as this Court deems appropriate.

### COUNT III
### Specific Performance of Indemnity Agreement

52. Frankenmuth adopts, realleges, and incorporates by reference its allegations set forth in paragraphs 1 through 51 of its Complaint, as though fully set forth herein this paragraph

53. Frankenmuth has demanded that the Defendants indemnify and hold Frankenmuth harmless from any and all costs resulting from the Bonds issued for the Projects.

54. Frankenmuth has requested the Defendants post collateral for the use in discharging Frankenmuth's obligations under the Bonds.

55. The Defendants have failed to indemnify Frankenmuth, have not posted or deposited collateral with Frankenmuth, and have not provided Frankenmuth free access to the Indemnitors' books and records.

56. Frankenmuth lacks an adequate remedy at law and will suffer irreparable harm if the relief sought is not granted.

## PRAYER FOR RELIEF

WHEREFORE, Frankenmuth Mutual Insurance Company prays this Honorable Court:

(a) Order the Defendants to indemnify and exonerate Frankenmuth for all liabilities, losses, and expenses incurred by Frankenmuth as a result of Frankenmuth having executed the Bonds;

(b) Order the Defendants to pay Frankenmuth's costs, including reasonable attorneys' and consulting fees incurred herein;

(c) Order the Defendants to provide Frankenmuth access to inspect the Indemnitors' books and records; and

(d) Grant such additional relief as this Court deems appropriate.

## COUNT IV
### Preliminary Injunction

57. Frankenmuth adopts, realleges, and incorporates by reference its allegations set forth in paragraphs 1 through 56 of its Complaint, as though fully set forth herein this paragraph.

58. By the express provisions of the Indemnity Agreement and by virtue of the equitable doctrines of exoneration and *quia timet*, Frankenmuth is entitled to have the Defendants place funds or other security with it immediately upon demand that are, among other things, sufficient to cover Frankenmuth's anticipated loss.

59. Unless preliminary injunctive relief is granted, Frankenmuth will not be adequately secured for its obligations prior to resolving the pending claims under the Bonds or incurring further expenses under the Bonds. Further, unless preliminary injunctive relief is granted, the Defendants are likely to sell, transfer, dispose, lien, secrete, or otherwise divert their assets from being used to discharge the Defendants' obligations to exonerate and indemnify Frankenmuth, all to Frankenmuth's irreparable harm.

60. The Indemnitors agreed to post collateral with Frankenmuth and the Indemnitors agreed, in part, that not posting collateral will cause Frankenmuth irreparable harm. Namely, the Indemnitors agreed as follows:

> …The Indemnitors acknowledge and agree that their failure to im-mediately [*sic*] deposit with Surety any sums demanded under this section shall cause irreparable harm to Surety for which it has no adequate remedy at law. Indemnitors agree and shall stipulate in any legal proceeding that Surety is entitled to injunctive relief for specific performance of said col-lateral [*sic*] deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary. Indemnitors further agree that any order enforcing this provision of this Agreement shall operate as a judgment, lien and encumbrance on any property owned by the Indemnitors.

*See* **Exhibit 1** at pp. 3, Collateral Security.

61. Frankenmuth has requested collateral from the Indemnitors.

62. As of the date of filing this Complaint, the Indemnitors have failed to post collateral with Frankenmuth.

**PRAYER FOR RELIEF**

WHEREFORE, Frankenmuth Mutual Insurance Company prays this Honorable Court:

(a) Issue a Preliminary Injunction ordering the Defendants to place with Frankenmuth the initial amount of $905,450.00 of funds by money, property, or liens or security interests in property, and any additional amount as determined by Frankenmuth as security for its obligations under the Bonds;

(b) Enjoin and restrain Defendants from selling, transferring, or disposing or liening their assets and property, and further enjoining and restraining Defendants from allowing their assets and property to be liened, unless and until Frankenmuth shall receive the funds requested in paragraph (a) above;

(c) Grant a lien upon all assets and property, including realty, personalty owned by Defendants, and property in which the Defendants have an interest. Such lien shall secure Frankenmuth against any loss that it may sustain under the Bonds. Such lien shall remain in effect unless and until Frankenmuth shall receive the funds requested in paragraph (a) above;

(d) Require the Defendants to indemnify and exonerate Frankenmuth from all liabilities, losses, and expenses incurred by Frankenmuth as a result of Frankenmuth having executed the Bonds;

(e) Require the Defendants provide Frankenmuth access to the Indemnitors' books and records for inspection and copying pursuant to the terms of the Indemnity Agreement; and

(f) Grant such additional relief as this Court deems appropriate.

Dated: September 9, 2022

BRENDE & MEADORS LLP

BY  */s/ Robert L. Meadors*
    Robert L. Meadors
2900 S. Phillips Ave. Ste. 100
PO Box 1024
Sioux Falls, SD 57101-1024
605/333-0070
605/333-0121 (fax)
rlm@bsmllp.com
 *Attorneys for Plaintiff*

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Frankenmuth Mutual Insurance Company

### DEFENDANTS
Firefly Builders, Inc., Wayne Koistinen, Roseanne Koistenin, and Larry Koistenen

(b) County of Residence of First Listed Plaintiff: **Saginaw**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Meade**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Robert L. Meadors, Brende & Meadors LLP, PO Box 1024 Sioux Falls, SD 57101; (605) 333-0070

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [x] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [x] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332 and 28 U.S.C. 1391 Section b)(2)

Brief description of cause:
breach of contract

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 905450.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 9/9/2022

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____