UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY, A MICHIGAN CORPORATION;<br><br>Plaintiff,<br><br>vs.<br><br>FIREFLY BUILDERS, INC., WAYNE KOISTINEN, ROSEANNE KOISTINEN, LARRY KOISTINEN,<br><br>Defendants. | 5:22-CV-05079-RAL<br><br>OPINION AND ORDER GRANTING AND ENTERING PRELIMINARY INJUNCTION |

Frankenmuth Mutual Insurance Company ("Frankenmuth") sued Defendants Firefly Builders, Inc. ("Firefly"), Wayne, Roseanne, and Larry Koistinen (collectively "Defendants") for violating an indemnification contract. Doc. 1. Frankenmuth filed a motion for preliminary injunction, claiming that Defendants' actions were causing it irreparable harm. Doc. 4. For the reasons set forth below, this Court grants Frankenmuth's motion for a preliminary injunction.

I. Facts

Frankenmuth provides surety bonds to construction contractors; Firefly Builders, Inc., is such a business. Doc. 1 ¶¶ 5–6. Prior to issuing performance or payment bonds, Frankenmuth requires its bonded principals to sign a General Agreement of Indemnity ("Indemnity Agreement" or "Agreement"). Doc. 5 at 2; Doc. 5-1. On or about October 11, 2021, Defendants signed the Indemnity Agreement. Doc. 1 ¶¶ 8–10; Doc. 1-1 at 8; Doc. 5 at 2; Doc. 5-1 at 8. Firefly signed the Indemnity Agreement as a corporate indemnitor and Wayne, Roseanne, and Larry Koistinen

1

signed the Agreement as individual indemnitors. Doc. 1-1 at 8; Doc. 5-1 at 8. In the Indemnity Agreement, Defendants agreed to "exonerate, indemnify, and save [Frankenmuth] harmless from and against all Loss." Doc. 1 ¶ 15; Doc. 1-1 at 3; Doc. 5 at 2; Doc. 5-1 at 3. Among other thing "Loss" was defined in the Agreement as demands, liabilities, legal and consult fees, and expenses Frankenmuth incurs or might be exposed to in connection with the issued bonds or the Agreement. Doc. 1 ¶¶ 14–16 Doc. 1-1 at 2; Doc. 5 at 2; Doc. 5-1 at 2. Defendants also agreed to provide collateral security immediately and upon demand of Frankenmuth in an amount Frankenmuth determined to be sufficient to discharge any loss or anticipated loss, Doc. 1 ¶ 19; Doc. 1-1 at 2–3; Doc. 5 at 2–3; Doc 5-1 at 2–3, and provide Frankenmuth a security interest in their property, now owned or hereafter acquired, Doc. 1-1 at 4–5; Doc. 5 at 3–4; Doc. 5-1 at 4–5. The Indemnity Agreement states "that [Frankenmuth] would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of" their promise to provide collateral. Doc. 1 ¶ 18; Doc. 1-1 at 3; Doc. 5 at 3; Doc 5-1 at 3. Defendants agreed to provide access to their books, records, and other information relating to their financial affairs. Doc. 1 ¶ 21; Doc. 1-1 at 4; Doc. 5 at 6; Doc. 5-1 at 4. Finally, the Indemnity Agreement provided that Maine law would govern any matter arising out of or relating to this Agreement. Doc. 1-1 at 7; Doc. 5 at 8; Doc. 5-1 at 7.

Based on the Indemnity Agreement, Frankenmuth issued one performance bond and six payment bonds on behalf of Firefly, as principal, and at the request of Wayne, Roseanne, and Larry Koistinen. Doc. 1 ¶¶ 22–23; Doc. 5 at 4–5; Doc. 5-3; Doc. 5-4. These bonds totaled $855,450.00 and break down as follows:

| Bond Number | Bond Type | Obligee | Project Name | Bond Amount |
|---|---|---|---|---|
| SUR0003569 | Performance | U.S. Army Corps of Engineers | Thomaston Garage Bond | $223,850.00 |
| SUR0003569 | Payment | Army Corps of Engineers | Thomaston Garage Bond | $223,850.00 |
| SUR0003570 | Payment | U.S. Government, Nebraska National Forest | East Ash Bond | $87,450.00 |
| SUR0003571 | Payment | Army Corps of Engineers | Mosquito Creek Bond | $58,570.00 |
| SUR0003572 | Payment | U.S. Fish & Wildlife Service | Wind River Bond | $124,990.00 |
| SUR0003573 | Payment | U.S. Government | Stone Lakes Bond | $48,520.00 |
| SUR0003578 | Payment | U.S. Government | National Elk NWR Kiosk Bond | $88,220.00 |
| | | | Total: | $$855,450.00 |

Doc. 1 at 8; Doc. 5 at 4–5; Doc. 5-3; Doc. 5-4.

On May 26, 2022, Frankenmuth began to receive claims on the bonds relating to Firefly's projects. Doc. 1 ¶ 24; Doc. 5 at 5; Doc. 5-2 at 1–3. Frankenmuth initially received claims totaling $23,998.63, which potentially exposes them to $87,450.00 on the East Ash project. Doc. 1 ¶¶ 24–27; Doc. 5 at 5; Doc. 5-2 at 2. Frankenmuth also received claims totaling $65,621.40 on the Mosquito Creek project. Doc. 1 at 8; Doc. 5 at 6; Doc. 5-2 at 2. Frankenmuth also has received claims on the Wind River project and the Thomaston Garage project. Doc. 1 ¶¶ 22–27; Doc. 5 at 6; Doc. 5-2 at 4–6.

Frankenmuth, on receiving these claims, sent two separate demand letters to the Defendants, Doc. 5-2, requesting that they deposit collateral to match these claims, totaling $631,600 by July 28, 2022, and allow Frankenmuth to inspect Firefly's financial records, Doc. 1 ¶¶ 28–30; Doc. 5 at 6; Doc. 5-2 at 6. Defendants failed to comply with these demands and the terms of the Indemnity Agreement. Doc. 1 ¶¶ 31–33; Doc. 5 at 6–7. Frankenmuth now estimates that they will have an anticipated loss of $905,450.00, which is the sum of the bonds ($855,450)

3

plus $50,000 in attorneys fees. Doc. 1 ¶ 27; Doc. 5 at 6; Doc. 6 at 4. Being undercollateralized and at risk of becoming an unsecured creditor, Doc. 1 ¶ 34;Doc. 5 at 7, Frankenmuth brought this action on September 9, 2022, Doc. 1, and filed for preliminary injunction, Doc. 4. Defendants received service on September 12, 2022, Doc. 8; Doc. 9; Doc. 10; Doc. 11, but have failed to answer the complaint or respond to the motion for preliminary injunction.

**II.   Analysis**

In determining whether to grant a preliminary injunction, this Court considers the factors set forth in Dataphase Systems, Inc. v. C L Systems, Inc.,: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." 640 F.2d 109, 114 (8th Cir. 1981) (en banc); see also Windham Land Tr. v. Jeffords, 967 A.2d 690, 702 (Me. 2009) (reiterating similar standards); Dep't Env't Prot. v. Emerson, 563 A.2d 762, 768 (Me. 1989) (same); Ingraham v. Univ. of Maine at Orono, 441 A.2d 691, 693 (Me. 1982) (same).[1] These criteria are weighed together based on the specific facts of each case. Dataphase Sys., Inc., 640 F.2d at 113–14; Dep't of Env't Prot., 563 A.2d at 768. As discussed below, the specific circumstances of this case weigh in favor of granting Frankenmuth's motion for a preliminary injunction.

"Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction. It is well established that irreparable harm occurs when a party has

---

[1] Plaintiff is a Michigan corporation, Defendants are South Dakota residents and a South Dakota corporation, and it is unclear from the complaint where the federal projects are. The Indemnification Agreement states that Maine law will govern the Agreement. This Court makes no finding that Maine law does in fact govern this matter, but draws the substantive law from Maine consistent with the Indemnification Agreement. Maine law is not peculiar on indemnification agreements regardless.

4

no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Grasso Enterprises, LLC v. Express Scripts, Inc., 809 F.3d 1033, 1040 (8th Cir. 2016) (cleaned up and citations omitted); Bangor Hist. Track, Inc. v. Dep't of Argic., 837 A.2d 129, 133–34 (Me. 2003). The moving party bears the burden of proof and must present evidence to support a claim of irreparable injury. Grasso Enterprises, LLC, 809 F.3d at 1041 n.4; Bangor Hist. Track, Inc., 837 A.2d at 133. The Supreme Judicial Court of Maine has approvingly cited to the Restatement (Third) of Suretyship and Guaranty when such matters have come before it and has drawn principles from the Restatement. MP Assoc. v. Liberty, 771 A.2d 1040, 1047 (Me. 2001); see also Matthews v. Matthews, 148 A. 796, 798 (Me. 1930) (using similar language to that which appears in the restatement, but not directly citing to the restatement). According to the Restatement, an injunction can be considered as a present remedy for a breach of the duty to refrain from harming the expectations of the company issuing the surety. Restatement (Third) of Suretyship and Guaranty: Principal Obligor's Duty of Performance § 21 cmt. j (updated 2022). A secondary obligor, such as Frankenmuth, is entitled to relief that will properly protect its interest if the principal obligor fails to perform, and continues to cause "the secondary obligor irreparable harm." Id. § 21(3).

Here, Frankenmuth has submitted evidence of irreparable harm. First, the Indemnity Agreement, signed by all parties in this suit, states that a breach of the Agreement would cause Frankenmuth irreparable injury with no adequate remedy at law. Doc. 5 at 3; Doc 5-1 at 3; Doc. 6 at 3. The relief Frankenmuth claims has a monetary aspect, which is normally insufficient to show irreparable injury. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop, 839 F. Supp. 68, 73–74 (D. Me. 1993) (stating that the availability of money damages in the future suggests harm is not irreparable); Scott v. Benson, 863 F. Supp. 2d 836, 844 (N.D. Iowa 2012) (defining

"irreparable" as unable to be fully compensated with money damages). However, Frankenmuth argues that its true irreparable injury stems from potentially losing its security interest and priority level, essentially becoming an unsecured creditor. Doc. 5 at 13. The Defendants have allegedly failed to perform their duties under the Indemnity Agreement by refusing to provide the collateral and by failing to allow Frankenmuth access to their financial records. Doc. 1 at ¶¶ 31–34; Doc. 5 at 6. Further, Defendants have allegedly failed to meet their obligations to the obligees on several of the bonds Frankenmuth has issued, causing the obligees to make claims against Frankenmuth. Doc. 1 ¶ 33; Doc. 5 at 5–7; Doc. 5-2; Doc. 6 ¶ 8. Realistically, given the lack of performance or any response in this case, the Defendants might be insolvent such that a later monetary award for Frankenmuth against the Defendants would be little remedy at all, absent the opportunity of Frankenmuth to secure the debt. See Restatement (Third) of Suretyship and Guaranty § 21 cmt. i. As such, Frankenmuth likely lacks an adequate remedy at law and will suffer irreparable harm if an injunction is not ordered.

The balance of harm weighs in favor of issuing the injunction. The balance of harm analysis requires a court to consider "what would result in the following scenarios: (1) if the preliminary injunction was improperly denied because plaintiffs prevailed on the merits of the case; and (2) if the preliminary injunction was improperly granted because defendants prevailed on the merits of the case." Planned Parenthood Minn. N.D., S.D. v. Noem, 584 F. Supp. 3d 759, 781 (D.S.D. 2022) (citations omitted); see also Dep't of Env't Prot., 563 A.2d at 770 ("The harm that granting the preliminary injunction causes [Defendant] is simply the harm of taking the required steps now rather than later, after the trial on the merits."). Thus, if there is a high likelihood of success on the merits, the harm to the defendant if the injunction is issued is likely relatively small. See Planned Parenthood Minn, N.D., S.D., 584 F. Supp. 3d at 781; Dep't of Env't

6

Prot., 563 A.2d at 770. As discussed next, Frankenmuth's likelihood of success on the merits is high. Thus, any harm to Defendants from issuance of the preliminary injunction is likely minimal. Furthermore, the injunction will only compel Defendants to perform commitments as agreed under the Indemnity Agreement. On the other hand, Frankenmuth is at risk of losing its opportunity for a security interest without Defendants providing financial information and collateral. Such an injury outweighs any harm that granting injunctive relief would inflict on the Defendants.

Frankenmuth is likely to succeed on the merits of their claim. The necessary showing of a likelihood of success on the merits may hinge on the extent of relief being sought. Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 731 (8th 2008) (discussing why the showing is a "substantial likelihood" at times and only a "fair chance" at others); Bangor Hist. Track, Inc., 837 A.2d at 132. Where the injunction has mandatory aspects, such relief should be granted sparingly. Heckler v. Lopez, 463 U.S. 1328, 1333 (1983) (citation omitted). Such injunctions are never granted as a matter of right, but rather in the exercise of sound judicial discretion. Id. (citations omitted); Dep't of Env't Prot., 563 A.2d at 771. The burden on the movant is particularly demanding for a mandatory injunction because "granting the preliminary injunction will give the movant substantially the relief it would obtain after a trial on the merits." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (cleaned up and citation omitted). This Court must exercise its discretion with "caution," and grant the preliminary injunction only if the movant has shown that "the balance of other factors tips *decidedly* toward the movant." Id. (emphasis added) (citation omitted); Dep't of Env't Prot., 563 A.2d at 771.

Generally, "there must be proof of damage actually suffered to enable one to maintain an action upon a contract of indemnity." Howard & Bowie, P.A. v. Collins, 759 A.2d 707, 712 (Me. 2000) (cleaned up and citations omitted). Here, Frankenmuth already faces claims under the

bonds. Under the Indemnity Agreement, Frankenmuth has a viable claim for relief against the Defendants to be indemnified and for access to financial information. See Matthews, 148 A. at 798; see also Restatement (Third) of Suretyship and Guaranty § 21(2) cmt. i ("While, if the principal obligor breaches this duty and the secondary obligor is called on to perform the secondary obligation, the principal obligor will have the duty to reimburse the secondary obligor, it is inequitable for the secondary obligor to be compelled to suffer the inconvenience and temporary loss that performance of the secondary obligation will entail. Thus, if the principal obligor has no defense to its duty of performance, the secondary obligor is entitled to appropriate relief protecting its interests."); Ticor Title Ins. Co. v. Middle Street Office Tower A Ass., 768 F. Supp. 390, 392 (D. Me. 1991) (relying on Ninth Circuit precedent in finding that "specific performance is available as a remedy for breach of an indemnity agreement when it is in the nature of a collateral security agreement.").

There are certain mandatory aspects to Frankenmuth's requested injunction because, rather than maintaining the status quo by ordering Defendants not to transfer funds, they request the depositing of collateral and the production of records. As such, Frankenmuth must show a clear likelihood or a probability of success on the merits, not just a reasonable likelihood. Planned Parenthood Minn., N.D., S.D., 530 F.3d at 731; Bangor Hist. Track, Inc., 837 A.2d at 132. Regardless, this higher standard is met.

Under the terms of the Indemnity Agreement the Defendants agreed to "exonerate, indemnify and save company as harmless from and against all Loss," Doc. 1-1 at 3; 5-1 at 3, and "deposit with [Frankenmuth], upon demand, funds, other collateral security acceptable to [Frankenmuth], in an amount as determined by [Frankenmuth] sufficient to discharge any Loss or anticipated Loss," Doc. 1-1 at 3; Doc. 5-2 at 3. Loss is defined in the Agreement as including

demands, liabilities, costs, legal, and consultant fees. Doc. 1-1 at 2; Doc. 5-1 at 2. Under Maine law, "indemnity provisions in a contract of indemnity should be interpreted according to their plain, unambiguous language." United States v. JMG Excavating & Const. Co., Inc., 2005 WL 3557410, at *7 (D. Me. Nov. 4, 2005), aff'd 2005 WL 3303935 (D. Me. Dec. 5, 2005) (quoting Devine v. Roche Biomedical Labs., Inc., 637 A.2d 441, 446 (Me. 1994)) (cleaned up). "An indemnification claim based on contract must rest on a clear, express, specific, and explicit contractual provision, under which the party against which a claim is to be asserted has agreed to assume the duty to indemnify." Id. (quoting Devine, 637 A.2d at 446). The Indemnity Agreement provisions are clear, express, specific, and explicit in placing a duty on Defendants under these circumstances to indemnify Frankenmuth provide access to certain financial information, and post the required collateral to protect Frankenmuth from such harm.

Further, a breach of the Indemnity Agreement occurs whether the Defendants breached a contract that was covered in whole or in part under a payment or performance bond or a failure to perform the signed Indemnity Agreement. Doc. 1-1 at 1–2; Doc. 5-1 at 1–2. This default triggers the remedy provision of the contract, which states that such a default would "cause irreparable harm to [Frankenmuth] for which [Frankenmuth] has no adequate remedy at law. [Frankenmuth] shall be entitled to injunctive relief and/or specific performance . . . ." Doc. 1-1 at 4; Doc. 5-1 at 4. This clause clear about the expectations of harm and the remedies preferred under the contract. Defendants not only defaulted by failing to pay subcontractors and failing to perform, but also defaulted by failing to comply with the Indemnity Agreement by refusing to produce their financial records for Frankenmuth's inspection. There is a clear likelihood under the plain language of the Indemnity Agreement that Frankenmuth would be successful under Maine law to force Defendants

to provide financial records, post collateral, and reimburse Frankenmuth for any anticipated loss. Doc. 1-1 at 3; Doc. 5-1 at 3.

The public interest is not adversely affected by this Court issuing the injunction for Frankenmuth. While the public interest might not be relevant in every matter to determine whether a preliminary injunction is appropriate, see Riley Ins. Agency, LLC v. Champoux Ins. Agency, Inc., No. Civ.A. CV-05-691, 2005 WL 3678057, at *2 (Me. Super. Ct. Dec. 1, 2005), considering the public interest remains a factor under both Maine and federal law, see Dataphase Sys., Inc., 640 F.2d at 113, Ross v. Emerson, No. CV-05-262, 2005 WL 3340087, at *3 (Me. Super. Ct. Nov. 3, 2005); Crafts v. Quinn, 482 A.2d 825, 826–27 (Me. 1984). Here, the public interest is not a compelling factor. However, there is a general public interest in enforcing expectations of contracting parties and honoring obligations. Issuing this injunction does not adversely affect the public interest.

The only remaining issue is what, if any, bond is required. Rule 65 of the Federal Rules of Civil Procedure provides that a "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The amount of the bond rests within the sound discretion of the trial court . . . ." Stockslager v. Carroll Elec. Coop. Corp., 528 F.2d 949, 951 (8th Cir. 1976). One court has concluded that under the mandatory language of Rule 65(c), "requiring a bond in some amount before issuing a preliminary injunction is far the better course." Sak v. City of Aurelia, 832 F. Supp. 2d 1026, 1048 (N.D. Iowa 2011) (citation and cleaned up) (requiring a bond of one dollar where the potential for damage was "extremely limited"). In practice, however, there is little difference between a one dollar bond and no bond. Defendants did not respond to the motion, so no party has requested posting of a bond,

let alone suggested an amount. Because the relief granted to Frankenmuth through a preliminary injunction is what the Agreement requires anyway, this Court will not require Frankenmuth to post a bond. This Court will consider a motion and argument to the contrary if Defendants file a motion setting forth good cause to do so.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that Frankenmuth's Motion for Preliminary Injunction, Doc. 4, is granted and that Defendants Firefly Builders, Inc., Wayne, Roseanne, and Larry Koistinen, and all those acting in concert or participation with them (including Firefly's officers, managers, guarantors, and employees):

1. Must place with Frankenmuth the amount of $855,450.00 of funds by money, property, or liens or security interests in property as security for its obligations under the bonds;

2. Must indemnify Frankenmuth from all liabilities, losses, and expenses incurred by Frankenmuth as a result of Defendants' failure to perform on contracts assured by bonds;

3. Must provide Frankenmuth with access to the Defendants' books and records for inspection, consistent with the terms of the Indemnity Agreement; and

4. Are enjoined until further order from this Court from selling, transferring, or disposing of Firefly assets and property, or from selling, transferring, or disposing of personal assets and property of any significant value, as well as enjoined from granting new liens or security interests in their assets and property unless and until they comply with paragraphs 1, 2, and 3 of this injunction. It is further

ORDERED that Defendants answer the Complaint within the next fourteen (14) days, lest default judgement enters. It is further

ORDERED that the Clerk of Court send by certified mail to each Defendant a copy of this Opinion and Order Granting and Entering Preliminary Injunction. It is finally

ORDERED that this Court may hold a hearing on contempt of court sanctions if Defendants fail to comply forthwith with this Preliminary Injunction.

DATED this 18th day of October, 2022.

BY THE COURT:

*[signature]*
ROBERTO A. LANGE
CHIEF JUDGE