UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY, A MICHIGAN CORPORATION;<br><br>Plaintiff,<br><br>vs.<br><br>FIREFLY BUILDERS, INC., WAYNE KOISTINEN, ROSEANNE KOISTINEN, LARRY KOISTINEN,<br><br>Defendants. | 5:22-CV-05079-RAL<br><br>OPINION AND ORDER SUPPORTING DEFAULT JUDGMENT AND DAMAGE AMOUNT |

Plaintiff Frankenmuth Mutual Insurance Company (Frankenmuth) sued Defendants Firefly Builders, Inc. (Firefly), Wayne Koistinen, Roseanne Koistinen, and Larry Koistinen for breach of an indemnification agreement. Doc. 1. This Court granted a preliminary injunction based on the contract language, Doc. 12, but Defendants did not comply with that injunction. Defendants never answered the complaint, prompting the Clerk's Entry of Default. Doc. 26. After this Court entered an Order Regarding Possible Sanction and Final Judgment Amount, two of the Defendants abided by a court order to attend a hearing and did not contest the merits of Frankenmuth's claim. Docs. 30, 34–35. Frankenmuth after that hearing filed affidavits setting forth its damages, Docs. 36–37, to which Defendants have not objected. For the reasons discussed below, this Court grants default judgment and awards a portion of Frankenmuth's request for damages.

1

## I.     Facts

Frankenmuth provides surety bonds to construction contractors; Firefly is such a business. Doc. 1 ¶¶ 5–6. Prior to issuing performance or payment bonds, Frankenmuth requires its bonded principals to sign a General Agreement of Indemnity ("Indemnity Agreement" or "Agreement"). Doc. 5 at 2; Doc. 5-1. On or about October 11, 2021, Defendants signed the Indemnity Agreement. Doc. 1 ¶¶ 8–10; Doc. 1-1 at 8; Doc. 5 at 2; Doc. 5-1 at 8. Firefly signed the Indemnity Agreement as a corporate indemnitor and Wayne, Roseanne, and Larry Koistinen signed the Agreement as individual indemnitors. Doc. 1-1 at 8; Doc. 5-1 at 8. In the Indemnity Agreement, Defendants agreed to "exonerate, indemnify, and save [Frankenmuth] harmless from and against all Loss." Doc. 1 ¶ 15; Doc. 1-1 at 3; Doc. 5 at 2; Doc. 5-1 at 3. Among other things "Loss" was defined in the Agreement as demands, liabilities, legal and consult fees, and expenses Frankenmuth incurs or might be exposed to in connection with the issued bonds or the Agreement. Doc. 1 ¶¶ 14–16 Doc. 1-1 at 2; Doc. 5 at 2; Doc. 5-1 at 2. Defendants agreed to provide collateral security immediately and upon demand of Frankenmuth in an amount Frankenmuth determined to be sufficient to discharge any loss or anticipated loss, Doc. 1 ¶ 19; Doc. 1-1 at 2–3; Doc. 5 at 2–3; Doc 5-1 at 2–3, and to provide Frankenmuth a security interest in their property, now owned or hereafter acquired, Doc. 1-1 at 4–5; Doc. 5 at 3–4; Doc. 5-1 at 4–5. Defendants also agreed to provide access to their books, records, and other information relating to their financial affairs. Doc. 1 ¶ 21; Doc. 1-1 at 4; Doc. 5 at 6; Doc. 5-1 at 4. The Indemnity Agreement provided that Maine law would govern any matter arising out of or relating to this Agreement. Doc. 1-1 at 7; Doc. 5 at 8; Doc. 5-1 at 7.

Based on the Indemnity Agreement, Frankenmuth issued one performance bond and six payment bonds on behalf of Firefly, as principal, and at the request of Wayne, Roseanne, and Larry

Koistinen. Doc. 1 ¶¶ 22–23; Doc. 5 at 4–5; Doc. 5-3; Doc. 5-4. These bonds totaled $855,450.00 and break down as follows:

| Bond Number | Bond Type | Obligee | Project Name | Bond Amount |
|---|---|---|---|---|
| SUR0003569 | Performance | U.S. Army Corps of Engineers | Thomaston Garage Bond | $223,850.00 |
| SUR0003569 | Payment | Army Corps of Engineers | Thomaston Garage Bond | $223,850.00 |
| SUR0003570 | Payment | U.S. Government, Nebraska National Forest | East Ash Bond | $87,450.00 |
| SUR0003571 | Payment | Army Corps of Engineers | Mosquito Creek Bond | $58,570.00 |
| SUR0003572 | Payment | U.S. Fish & Wildlife Service | Wind River Bond | $124,990.00 |
| SUR0003573 | Payment | U.S. Government | Stone Lakes Bond | $48,520.00 |
| SUR0003578 | Payment | U.S. Government | National Elk NWR Kiosk Bond | $88,220.00 |
| | | | Total: | $855,450.00 |

Doc. 1 at 8; Doc. 5 at 4–5; Doc. 5-3; Doc. 5-4.

On May 26, 2022, Frankenmuth began to receive claims on the bonds relating to Firefly's issues with performance on the listed projects. Doc. 1 ¶ 24; Doc. 5 at 5; Doc. 5-2 at 1–3. Frankenmuth initially received claims totaling $23,998.63, which potentially exposes them to $87,450.00 on the East Ash project. Doc. 1 ¶¶ 24–27; Doc. 5 at 5; Doc. 5-2 at 2. Frankenmuth received claims totaling $65,621.40 on the Mosquito Creek project. Doc. 1 at 8; Doc. 5 at 6; Doc. 5-2 at 2. Frankenmuth also has received claims on the Wind River project and the Thomaston Garage project. Doc. 1 ¶¶ 22–27; Doc. 5 at 6; Doc. 5-2 at 4–6.

Frankenmuth, on receiving these claims, sent two separate demand letters to the Defendants, Doc. 5-2, requesting that they deposit collateral to match these claims, totaling $631,600 by July 28, 2022, and allow Frankenmuth to inspect Firefly's financial records, Doc. 1 ¶¶ 28–30; Doc. 5 at 6; Doc. 5-2 at 6. Defendants failed to comply with these demands and the terms of the Indemnity Agreement. Doc. 1 ¶¶ 31–33; Doc. 5 at 6–7. Frankenmuth then filed this

action seeking indemnity in September 2022. This Court granted a preliminary injunction based on the language of the indemnification agreement requiring Defendants to perform the contract by posting security, reimbursing Frankenmuth, opening their financial records to Frankenmuth, and preserving their assets. Doc. 12 at 11–12. After Defendants ignored the preliminary injunction and failed to answer or respond to the lawsuit, the Clerk of Court made an entry of default. Doc. 26. Frankenmuth then filed a Motion for Default Judgment. Doc. 28.

This Court entered an Order Granting Motion to Show Cause and Entering Default Judgement, Doc. 30, and held a hearing on February 9, 2023, which all parties except for Roseanne Koistinen attended. Doc. 34. After the hearing, this Court entered an Order Regarding Possible Sanction and Final Judgment Amount, requiring Defendants to cooperate fully with Frankenmuth to provide information so that Frankenmuth could assess its total loss and submit detailed calculations of their damages. Doc. 35. Frankenmuth attempted to cooperate with Defendants and to come to an agreement regarding damages, but Defendants did not cooperate. Doc. 36 ¶ 14. Frankenmuth then filed supplements and affidavits calculating their actual and projected losses. Doc. 37. Defendants have not responded or contested the damage calculations, and their time to do so has elapsed. D.S.D. Civ. LR 7.1.B.

Within their supplements, Frankenmuth requests $164,869.22, plus interest, in damages. As of April 27, 2023, Frankenmuth has incurred $103,720.22[1] in losses, costs, and fee in connection with claims under the Bonds, and enforcing the terms of the indemnity agreement. Doc. 37 ¶ 4. Frankenmuth further estimates that they will incur an additional $61,150, which includes an expected claim on a performance bond in the amount of $46,150 and anticipated legal

---

[1] Frankenmuth uses the number $104,719.22, Doc. 37-3, but the $91,704.12 payouts plus the $12,016.10 in legal fees total $103,720.22.

4

fees of $15,000.  Doc. 36 ¶ 16; Doc. 37-3.  The final attachment to the affidavit shows that Frankenmuth has lost $91,704.12 by paying the bond amounts under the Mosquito Creek Bond ($57,570.00), East Ash Bond ($23,999.63), and Wind River Bond ($10,134.49).  Doc. 37-3.  Frankenmuth also reports spending $12,016.10 in legal fees.  Id.

**II.  Analysis**

Upon a default judgment, the factual allegations of the complaint are taken as true, except those concerning damages.  Murray v. Lene, 595 F.3d 868, 871 (8th Cir. 2010).  A party who obtains a default judgment is still "required to prove the amount of damages that should be awarded."  Oberstar v. FDIC, 987 F.2d 494, 505 n.9 (8th Cir. 1993).  When, as here, the defendant's complete failure to participate in the case hinders the calculation of damages, the plaintiff is entitled to all reasonable inferences, Pleitez v. Carney, 594 F. Supp. 2d 47, 48–49 (D.D.C. 2009), and need not prove its damages with absolute certainty, see Domanus v. Lewicki, 742 F.3d 290, 303 (7th Cir. 2014) ("[O]ur decisions allow broad latitude in quantifying damages, especially when the defendant's own conduct impedes quantification—even speculation has its place in estimating damages." (quotation and internal marks omitted))).  However, the damages must be proven by the preponderance of the evidence.  Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001).

Frankenmuth seeks to recover $164,869.22 in indemnification under their agreement with defendants, including payment under the bonds, legal fees, and anticipated payments and costs.  Doc. 1; Doc. 37-3.  Although Frankenmuth has already obtained Clerk's Entry of Default, this Court affirms here that the facts support recovery for violation of the indemnification agreement.  Under Maine law, "[a]n indemnification claim based on contract must rest on a clear, express, specific, and explicit contractual provision, under which the party against which a claim is to be

asserted has agreed to assume the duty to indemnify." Devine v. Roche Biomedical Laby's, Inc., 637 A.2d 441, 446 (Me. 1994). Like any other contract, indemnity provisions are interpreted according to their plain meaning. Id.; Fowler v. Boise Cascade Corp., 948 F.2d 49, 55 (1st Cir. 1991). Here, the contract plainly stated that the Defendants agreed to "exonerate, indemnify, and save [Frankenmuth] harmless from and against all Loss," namely, demands, liabilities, legal and consult fees, and expenses Frankenmuth incurs or might be exposed to in connection with the issued bonds or the Agreement. Doc. 1 ¶ 15; Doc. 1-1 at 3; Doc. 5 at 2; Doc. 5-1 at 3. In exchange for the agreement to indemnify Frankenmuth, Frankenmuth issued the bonds on which it now has paid claims. See Inhabitants of Industry v. Inhabitants of Starks, 65 Me. 167 (1875) (finding that the incurring of liability at the request of another is sufficient consideration for a contract of indemnity). Even though Frankenmuth paid on bond claims under the Mosquito Creek Bond ($57,570.00), East Ash Bond ($23,999.63), and Wind River Bond ($10,134.49), Defendants have refused to indemnify Frankenmuth or provide access to their books as they had agreed in the indemnification agreement. Thus, Defendants materially breached the indemnification agreement.

While the agreement states that Frankenmuth may recover losses that they *may* incur, Maine law governs this case and requires that "there must be proof of damage actually suffered to enable one to maintain an action upon a contract of indemnity." Howard & Bowie, P.A. v. Collins, 759 A.2d 707, 712 (Me. 2000) (cleaned up and citations omitted). The purpose of such a requirement is to avoid any unjust enrichment; otherwise, an indemnity company could obtain judgment for expected losses that never materialize. Hussey v. Collins, 30 Me. 190, 192 (1849). Therefore, this Court hesitates to enter default judgment for anticipated losses, costs, or expenses because Maine law appears to limit Frankenmuth to their actual losses. Frankenmuth has provided

6

the current amount of losses caused by the Defendants by accounting for the payment bond claims, which total $91,704.12, and legal fees, $12,016.10, claims damages in the amount of $103,720.22.

### III.  Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendants pay Frankenmuth $103,720.22 in damages.  This sum is the total of Frankenmuth's contractual indemnification damages to date.  It is further

ORDERED that default judgment in the amount of $103,720.22 enters for Frankenmuth against Defendants under Federal Rule of Civil Procedure 55(b)(2).  It is finally

ORDERED that Frankenmuth may file a motion to amend judgment amount together with an affidavit quantifying amounts if and when it incurs anticipated losses, costs, and expenses which it presently estimates at $61,150.00.  Frankenmuth at that time may provide the dates on which payments under bonds or attorneys fees and costs were made to facilitate calculation of prejudgment and post judgment interest.

DATED this 27th day of June, 2023.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE